IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INSYS THERAPEUTICS, INC., *et al.*, | Case No. 19-11292 (JTD) |
| Liquidating Debtors.[1] | (Jointly Administered) |
| WILLIAM H. HENRICH, in his capacity as LIQUIDATING TRUSTEE of the INSYS LIQUIDATION TRUST, | |
| Plaintiff, | Adversary No. 24-50008 (JTD) |
| v. | |
| MICHAEL L. BABICH, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

---

[1] The Liquidating Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

A.    Babich Pleads Guilty to Criminal Conspiracy and Is Sentenced to Prison ........................ 2

B.    Babich Fails to File Any Proof of Claim Prior to the Bar Date. ........................................ 4

C.    The Trustee Is Appointed to Pursue Claims Against Babich. ............................................ 4

D.    The Trustee Pursues Claims Against Babich. .................................................................... 6

E.    Babich Files Unauthorized Counterclaims Against the Trustee. ........................................ 7

ARGUMENT ........................................................................................................................... 8

A.    The Trustee Is Likely to Prevail on the Merits. ................................................................ 9

B.    The Trustee Will Suffer Irreparable Harm from a Denial of Injunctive Relief. ............... 14

C.    Babich Will Suffer No Harm from a Grant of Injunctive Relief. ..................................... 15

D.    The Public Interest Favors a Grant of Injunctive Relief. ................................................. 15

E.    The Trustee Is Not Required to Post a Bond. .................................................................. 16

CONCLUSION ...................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barton v. Barbour*,
   104 U.S. 126 (1881) ................................................................................................ 11

*Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*,
   421 F.3d 963 (9th Cir. 2005) ................................................................................ 14

*Brown v. Steadman (In re Cherry)*,
   2018 WL 2022986 (Bankr. S.D. Fla. Mar. 5, 2018) ....................................... 14, 15

*Davis v. Gray*,
   83 U.S. 203 (1872) ................................................................................................ 11

*Dunn v. Patriarch Partners, LLC (In re Zohar III Corp.)*,
   650 B.R. 622 (Bankr. D. Del. 2023) ..................................................................... 13

*Durie Props., LCC v. Wasserman (In re Day)*,
   2014 WL 4271647 (D.N.J. Aug. 28, 2014) ........................................................... 11

*Henkel v. Lickman (In re Lickman)*,
   286 B.R. 821 (Bankr. M.D. Fla. 2002) ............................................................ 14, 15

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
   276 F.3d 160 (3d Cir. 2001) ................................................................................... 9

*In re Insys Therapeutics Inc. Derivative Litig.*,
   C.A. No. 12696-JTL (Del. Ch.) .............................................................................. 6

*In re VistaCare Grp., LLC*,
   678 F.3d 218 (3d Cir. 2012) ................................................................................. 11

*Klein v. Shepard*,
   2019 WL 6700244 (D. Utah Dec. 9, 2019) .......................................................... 12

*McIntire v. China MediaExpress Holdings, Inc.*,
   113 F. Supp. 3d 769 (S.D.N.Y. 2015) ............................................................. 11, 13

*MF Global Holdings Ltd. v. Allied World Assurance Co. Ltd. (In re MF Global Holdings Ltd.)*,
   562 B.R. 866 (Bankr. S.D.N.Y. 2017) ............................................................. 11, 14

*Miller v. Mitchell*,
   598 F.3d 139 (3d Cir. 2010) ................................................................................... 9

*Neo Geo Screening, Inc. v. TeleChem Int'l, Inc.*,
   69 F. App'x 550 (3d Cir. 2003) .............................................................................. 9

*O'Donnell v. Royal Bus. Grp., Inc. (In re Oxford Homes, Inc.)*,
 180 B.R. 1 (Bankr. D. Me. 1995) ................................................................. 16

*Richardson v. Monaco (In re Summit Metals, Inc.)*,
 477 B.R. 484 (Bankr. D. Del. 2012) ........................................................ 12, 13

*Singer Mgmt. Consultants, Inc. v. Milgram*,
 650 F.3d 223 (3d Cir. 2011) ......................................................................... 9

*Smith v. Hilton (In re Swan Transp. Co.)*,
 596 B.R. 127 (Bankr. D. Del. 2018) ........................................................ 11, 15

*Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network, Inc.)*,
 303 B.R. 42 (Bankr. D. Del. 2003) .............................................................. 13

*Unencumbered Assets Trust v. Hampton-Stein (In re Nat'l Century Fin. Enters., Inc.)*,
 407 B.R. 895 (Bankr. S.D. Ohio 2009) ..................................................... 14, 15

*United States v. Continental Airlines (In re Continental Airlines)*,
 134 F.3d 536 (3d Cir. 1998) ......................................................................... 12

*Wagner v. Maddox*,
 2012 WL 13080114 (D.N.M. June 11, 2012) ................................................ 12

**Statutes**

11 U.S.C. § 105(a) ..................................................................................... 1, 9

11 U.S.C. § 1123(b)(3)(B) ......................................................................... 4, 16

18 U.S.C. § 1341 ......................................................................................... 2

18 U.S.C. § 1349 ......................................................................................... 2

18 U.S.C. § 1962(d) ..................................................................................... 2

18 U.S.C. § 371 ........................................................................................... 2

28 U.S.C. § 959(a) ....................................................................................... 12

**Rules**

Fed. R. Bankr. P.7065 ............................................................................... 1, 9

Fed. R. Civ. P. 65 ...................................................................................... 1, 9

Fed. R. Civ. P. 65(c) ................................................................................... 16

William H. Henrich, as liquidating trustee (the "Trustee") of the Insys Liquidation Trust (the "Liquidation Trust"), the successor to the above-captioned debtors (collectively, "Insys" or "Debtors"), submits this memorandum of law in support of his motion (the "Motion") pursuant to 11 U.S.C. § 105(a) and Federal Rule of Civil Procedure 65 (as made applicable herein by Federal Rule of Bankruptcy Procedure 7065), for a preliminary injunction enjoining Defendant Michael L. Babich ("Babich"), pending a final adjudication of the Complaint in this action,[2] from prosecuting counterclaims (the "Counterclaims") against the Trustee in a pending arbitration.

## PRELIMINARY STATEMENT

Through this Motion, the Trustee seeks to enjoin Babich from prosecuting his purported Counterclaims in violation of: (1) the Plan Injunction imposed by this Court in these bankruptcy cases; and (2) the *Barton* doctrine as recognized by the United States Supreme Court and the Third Circuit. Babich brought his Counterclaims against the Trustee contrary to the express terms of the Plan Injunction and without seeking leave from this Court as required by the *Barton* doctrine. As such, the unauthorized Counterclaims are void, and Babich should be enjoined from prosecuting them. Preliminary relief is particularly appropriate here, where Babich's admitted criminality caused immense damages to Insys and its creditors, ultimately resulting in the company's bankruptcy proceedings. In effect, Babich seeks to use the unauthorized Counterclaims to shift civil liability for his own criminal conduct back onto the Trustee, thereby depleting recoveries for victims of Babich's misconduct.

---

[2] *See* Trustee's Original Complaint and Application for Injunctive Relief (the "Compl."). Undefined terms used in this Motion have the same meanings ascribed to them in the Complaint.

## FACTUAL BACKGROUND

A more complete recitation of the factual background is set forth in the Complaint filed in this action.  To avoid repetition, the Trustee incorporates by reference all allegations and exhibits from the Complaint, and briefly summarizes below the facts most relevant to this Motion.

### A.    Babich Pleads Guilty to Criminal Conspiracy and Is Sentenced to Prison.

Babich is the former Chief Executive Officer of Insys.[3]  On December 6, 2016, Babich and five other executives were criminally indicted on multiple counts, including for violating 18 U.S.C. § 1962(d) (racketeering conspiracy), 18 U.S.C. § 1349 (mail fraud and wire fraud conspiracy to defraud insurers), and 18 U.S.C. § 371 (conspiracy to violate the Anti-Kickback Statute), in *United States v. Babich, et al.*, No. 16-CR-10343 (D. Mass.) (the "Criminal Action").[4]  The indictment alleged that Babich and others had devised and fostered an illegal scheme: (a) to bribe doctors to prescribe Subsys for non-cancer patients; and (b) to defraud insurers into paying for those prescriptions.

On January 9, 2019, and shortly before the trial commenced in the Criminal Action, Babich waived indictment and pleaded guilty to a criminal information charging him with violating 18 U.S.C. § 371 (conspiracy to commit mail and wire fraud) and 18 U.S.C. § 1341 (mail fraud).[5]  In connection with his guilty plea, Babich agreed to cooperate with the federal government.  As part of his cooperation agreement, Babich and the government submitted an agreed statement of facts (the "Statement of Facts") for his plea hearing, acknowledging that:

- Babich "conspired with others . . . to bribe doctors and other clinicians to prescribe Subsys for their patients," without regard to medical necessity or other risks posed to the patients; and

---

[3] Compl. ¶ 2.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 14 & Ex. A.  The Trustee requests that the Court take judicial notice of the criminal information pursuant to Federal Rule of Evidence 201.

- Babich agreed to and participated in directing Insys employees to "provide false and misleading information to insurance companies and [pharmacy benefit managers] to obtain authorization and payments for Subsys."[6]

Babich affirmed the accuracy of the Statement of Facts during his plea hearing.[7]

Babich testified for six days during the trial of his co-defendants in the Criminal Action.[8] Babich testified under oath that that the conspiracy existed between at least May 2012 and December 2015, when he was forced to resign as the company's Chief Executive Officer.[9]  Babich was ultimately sentenced to 30 months in jail and ordered to pay $48 million in restitution for his role as a "co-architect" of the criminal conspiracy.[10]  During his sentencing, Babich testified:

> Let there be no doubt in the court's mind, I take responsibility for my actions.  Part of taking responsibility was admitting what I had done wrong to the government, cooperating with them, and taking the stand here at trial to account for my crimes.  I do not offer any excuses . . . .
>
> It's my own fault for not quitting when I should have.  It all happened so fast and the fraud started and then increased until I found myself in a bad situation.  I know I had a choice and I made the wrong one.[11]

Babich is now out of prison and recently purchased a $2.3 million home in North Carolina.[12]

---

[6] Compl. ¶ 15 & Ex. B.  The Trustee requests that the Court take judicial notice of the Statement of Facts pursuant to Federal Rule of Evidence 201.

[7] Compl. ¶ 15 & Ex. C.  The Trustee requests that the Court take judicial notice of the plea hearing transcript pursuant to Federal Rule of Evidence 201.

[8] Compl. ¶ 16.

[9] *Id.*

[10] *Id.* ¶ 18 & Ex. D.  The Trustee requests that the Court take judicial notice of the sentencing transcript pursuant to Federal Rule of Evidence 201.

[11] Compl. ¶ 18 & Ex. D.

[12] Compl. ¶¶ 8, 33 & n.20.

**B.      Babich Fails to File Any Proof of Claim Prior to the Bar Date.**

On June 10, 2019, Insys commenced the above-captioned bankruptcy cases.  On July 15, 2019, this Court entered an order (D.I. 294) (the "Bar Date Order"), which: (a) established certain deadlines (collectively, the "Bar Dates") and procedures for the filing of proofs of claim in the bankruptcy cases; (b) approved a notice regarding the Bar Dates to be served on Insys's creditors ("Bar Date Notice"); (c) approved a notice regarding the Bar Dates to be published in certain national and local publications; and (d) found that these procedures constituted adequate notice of the Bar Dates to Insys's creditors.[13]  On August 1, 2019, pursuant to the Bar Date Order, Insys filed the Bar Date Notice in these bankruptcy cases (D.I. 383) and then served that notice on its creditors, including Babich (D.I. 406).[14]  Babich never filed any proof of claim in these bankruptcy cases, whether before or after the Bar Date.[15]  He failed to file a proof of claim even though he had been a defendant in the D&O Action—a stockholder derivative action filed on Insys's behalf—for several years before the Bar Date.[16]

**C.      The Trustee Is Appointed to Pursue Claims Against Babich.**

Under the Chapter 11 Plan confirmed by this Court,[17] the Trustee was appointed, and the Liquidation Trust was formed as the successor-in-interest to, and a representative of, the Debtors and their estates pursuant to 11 U.S.C. § 1123(b)(3)(B).[18]  The Chapter 11 Plan also provided for the transfer to, and vesting in, the Liquidation Trust of, *inter alia*, certain causes of action held by

---

[13] *Id.* ¶ 21.

[14] *Id.* ¶ 22.

[15] *Id.*

[16] *Id.*

[17] On January 16, 2020, this Court entered the Confirmation Order (D.I. 1115), thereby confirming the Chapter 11 Plan (D.I. 1115-1) in these bankruptcy cases.

[18] *See* Chapter 11 Plan §§ 5.6(a), 5.7(a) & 5.7(l); Confirmation Order ¶ 36, at 44.

the Debtors, including all causes of action against their former directors and officers, such as Babich (the "Babich Claims").[19]

The Chapter 11 Plan further provided for a permanent injunction, including against all persons who have held, hold, or may hold any claim against or interest in the Debtors, their estates, or the assets of the Liquidation Trust from commencing any action or lawsuit against the Debtors, their estates, or the Trustee.[20]  Specifically, the Chapter 11 Plan contained this Plan Injunction:

### 10.4    *Plan Injunction*.

**(a)    . . . [A]ll Persons who have held, hold, or may hold Claims or Interests are, with respect to such Claim or Interest, permanently enjoined after entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Parties mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Parties mentioned in this subsection (ii) or any property of any such transferee or successor . . . .**

**(b)    All Persons . . . holding Claims, Liens, Interests, charges, encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against or in a Debtor or the Trust Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors [or] the Trust Assets . . . are forever barred, estopped, and permanently enjoined from asserting against the Released Parties, their respective successors and assigns, their property or the Trust Assets, such Person's Claims, Interests, Liens, charges, encumbrances, and other interests (including rights or Claims based on any successor or transferee liability),**

---

[19] *See* Chapter 11 Plan § 5.7(d); Confirmation Order ¶ 50, at 51.

[20] *See* Chapter 11 Plan § 10.4(a)-(b); Confirmation Order ¶ 10, at 32.

> **including, without limitation, by: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Released Party, . . . or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) . . . .[21]**

This Court not only approved the Plan Injunction in its Confirmation Order, but also expressly retained jurisdiction to enforce the Plan Injunction.[22]   No provision of the Chapter 11 Plan preserved a creditor's ability to seek setoff after plan confirmation.

## D.    The Trustee Pursues Claims Against Babich.

Following his appointment pursuant to the Chapter 11 Plan, the Trustee prosecuted the Babich Claims by intervening in a pre-petition shareholder action asserting derivative claims in the Delaware Court of Chancery and filing an amended complaint asserting claims against Babich for breach of fiduciary duties, corporate waste, and unjust enrichment.[23]   Babich responded by filing an application to compel arbitration of the claims under the purported terms of his separation agreement with Insys.[24]   On November 27, 2023, the Delaware Court of Chancery granted Babich's application, holding that it is up to an arbitrator to determine whether the Trustee's claims are subject to arbitration under the separation agreement.[25]   On December 8, 2023, the Trustee asserted the Babich Claims in an arbitration proceeding (the "Arbitration") through the American Arbitration Association ("AAA").[26]   In his arbitration demand, the Trustee objected to the

---

[21] Chapter 11 Plan § 10.4(a)-(b); *see also* Compl. ¶ 39.

[22] *See* Confirmation Order ¶ 57, at 54; *see also* Chapter 11 Plan § 11.1(a)(xiii) (retaining jurisdiction to enforce the "injunction provisions set forth in this Plan").

[23] *See In re Insys Therapeutics Inc. Derivative Litig.*, C.A. No. 12696-JTL (Del. Ch.).

[24] Compl. ¶ 28.

[25] *Id.* ¶ 29.

[26] *Id.* ¶ 30 & Ex. E. The Trustee requests that the Court take judicial notice of the Trustee's arbitration demand pursuant to Federal Rule of Evidence 201.

jurisdiction of the AAA over his claims and indicated that he intends to seek dismissal for lack of jurisdiction.[27]

### E.    Babich Files Unauthorized Counterclaims Against the Trustee.

On December 27, 2023, Babich responded to the Trustee's arbitration demand and filed the Counterclaims against the Trustee.[28]  In the Counterclaims, Babich ducks any responsibility for his criminal conduct and takes positions directly contrary to this guilty plea and conviction. For example:

- Babich alleges that he "believed his actions were legal," even though he previously admitted that he had conspired to "bribe" doctors and to provide "false and misleading information" to insurance companies.

- Babich alleges that he "was not directly involved in implementing the speaker's program," even though he previously admitted that he had "conspired with others . . . to use the [speaker program] as a vehicle to bribe doctors."

- Babich alleges that he "was effectively compelled to plead guilty," even though he previously testified that no one was "forcing" him to plead guilty and he was pleading guilty of his "own free will" because he was, in fact, guilty.

Babich further alleges in the Counterclaims that his involvement with Insys's activities and his subsequent criminal conviction "have essentially made him unemployable."[29]  Thus, Babich alleges that "Insys is liable to [him] for negligence, fraud, and/or negligent misrepresentation," and he seeks a "set-off to any recovery" the Trustee might recover from him.[30]

---

[27] Compl. ¶ 30 & Ex. E.

[28] Compl. ¶ 31 & Ex. F. The Trustee requests that the Court take judicial notice of the Counterclaims pursuant to Federal Rule of Evidence 201.

[29] Despite his claim of being "unemployable," Babich seems to have landed on his feet following his criminal conviction and prison sentence.  In 2023, upon information and belief, Babich relocated from Arizona to Waxhaw, North Carolina, where he purchased a new home for $2.3 million.  The home sits in a gated community and features five bedrooms, six bathrooms, and even a billiard room and swimming pool.  Compl. ¶ 33 & n.20.

[30] Ex. F at 3.

Babich's allegations in the Counterclaims contradict not only his guilty plea and criminal conviction, but also public lawsuits filed by his own counsel.  Babich is represented by Fennemore Craig, P.C. ("<u>Fennemore</u>") (as well as a separate solo practitioner) in the Arbitration.  Just a few years ago, Fennemore represented multiple Arizona cities and counties in a series of significant opioid-related lawsuits <u>against</u> Babich.  Fennemore alleged in those lawsuits that Babich had "fueled the opioid epidemic" by conspiring to "bribe" doctors into prescribing Insys's fentanyl product for patients who did not need it and by conspiring to "defraud" insurance companies into paying for it.[31]

Babich did not obtain leave or other authorization from this Court before filing the Counterclaims against the Trustee, despite the prohibitions of the *Barton* doctrine and the express terms of the Plan Injunction.  Indeed, Babich did not even seek such authorization.  The Trustee was required to answer Babich's Counterclaims on January 11, 2023.[32]  In his answer, the Trustee objected to the jurisdiction of the AAA and asserted that the Counterclaims violate the *Barton* doctrine and the injunction and other provisions of the Chapter 11 Plan and Confirmation Order.[33] The Trustee, moreover, made a separate written demand on Babich to dismiss or withdraw the Counterclaims.[34]  But Babich rejected the Trustee's request.

## ARGUMENT

The Trustee seeks injunctive relief with respect to the unauthorized Counterclaims.  This Court's authority to grant injunctive relief is well-settled.  Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to

---

[31] Compl. ¶ 34 & Ex. G.  The Trustee requests that the Court take judicial notice of the complaint Fennemore filed on behalf of Pinal County pursuant to Federal Rule of Evidence 201.

[32] Compl. ¶ 36.

[33] *Id.*

[34] *Id.* ¶ 37 & Ex. H.

carry out the provisions of this title." 11 U.S.C. § 105(a). In addition, Federal Rule of Civil Procedure 65, as made applicable herein by Federal Rule of Bankruptcy Procedure 7065, authorizes this Court to issue injunctive relief, including a preliminary injunction.

This Court considers the following four factors in evaluating the requested injunctive relief: (1) whether the Trustee has shown a likelihood of success on the merits; (2) whether the Trustee will suffer irreparable harm by the denial of injunctive relief; (3) whether Babich will suffer greater harm by the grant of injunctive relief; and (4) whether the public interest favors injunctive relief. *See e.g.*, *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). The Trustee need not prevail on all four factors, only on the overall need for an injunction. *See Neo Geo Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003). In any event, all four factors weigh in favor of granting the requested injunctive relief here.

**A.     The Trustee Is Likely to Prevail on the Merits.**

To demonstrate a likelihood of success, the Trustee "need only prove a prima facie case." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). In other words, it is not necessary for the Trustee to show that he is "more likely than not" to prevail, but merely has "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). As explained below, the Trustee certainly has at least a reasonable chance of prevailing on his claims in this action.

As an initial matter, the Trustee has a reasonable likelihood of succeeding on his claim that Babich violated the Plan Injunction by asserting the Counterclaims. First, the Counterclaims

violate subsection (a) of the Plan Injunction.[35]  Babich is a "Person"[36] asserting a "Claim," as that term is defined under the Chapter 11 Plan and section 101(5) of the Bankruptcy Code,[37] by "commencing, conducting, or continuing" a "suit, action, or [ ] proceeding" affecting the Liquidation Trust—a "transferee" of the property of, and "successor in interest to," Insys—and its property.[38]  Moreover, through the Counterclaims, Babich seeks to "collect[ ] or otherwise recover[ ]" a "judgment, award, decree, or order against" the Liquidation Trust and its property.[39] Therefore, subsection (a) of the Plan Injunction bars Babich from asserting any claims against the Liquidation Trust.

Further, the Counterclaims also violate subsection (b) of the Plan Injunction.[40]  Babich is a "Person" that purports to hold a Claim against Insys and the Liquidation Trust.  Contrary to subsection (b) of the Plan Injunction, Babich is asserting claims against the Liquidation Trust, which is a "Released Party,"[41] a "successor" and "assign" of the Debtors,[42] and the Liquidation Trust's property and the Trust Assets.[43]  In addition, through the Counterclaims, Babich seeks to "collect[ ] or otherwise recover[ ]" a "judgment, award, decree, or order against" the Liquidation Trust and its property.  Thus, Babich has violated the Plan Injunction.

---

[35] Chapter 11 Plan § 10.4.

[36] *Id.* § 1.1 (defining "Person" as "an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity").

[37] *Id.* (defining "Claim" as "a 'claim,' as defined in section 101(5) of the Bankruptcy Code"); 11 U.S.C. § 101(5) (defining a "Claim", in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

[38] Chapter 11 Plan § 10.4(a).

[39] *Id.*

[40] *Id.* § 10.4(b).

[41] *Id.* § 1.1 (defining "Released Parties" to include the Debtors and their "predecessors, successors, permitted assigns, subsidiaries, and controlled affiliates").

[42] *Id.* § 10.4(b).

[43] *Id.*

The Trustee also has a reasonable likelihood of succeeding on his claim that Babich violated the *Barton* doctrine by bringing his Counterclaims.  This doctrine—which originated more than 142 years ago in *Barton v. Barbour*—states that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained."  *Barton v. Barbour*, 104 U.S. 126, 217 (1881) (citing *Davis v. Gray*, 83 U.S. 203 (1872)).  As held by the Third Circuit, as well as every other circuit court to address this question, the *Barton* doctrine applies with equal force to a bankruptcy trustee.  *See In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012) (collecting cases).  This includes post-confirmation trustees—like the Trustee here.  *See, e.g.*, *Smith v. Hilton (In re Swan Transp. Co.)*, 596 B.R. 127, 137-38 (Bankr. D. Del. 2018) ("Bankruptcy courts have held that the doctrine applies to trustees appointed by the bankruptcy court to administer post-confirmation liquidation of the bankruptcy estate.").

The *Barton* doctrine, moreover, applies in the context of claims brought in arbitration.  *See, e.g.*, *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 770, 774 (S.D.N.Y. 2015) (noting that "the rationale underlying *Barton* extends to arbitrations" and enjoining a party "from proceeding with the current arbitration because the Court did not grant leave"); *MF Global Holdings Ltd. v. Allied World Assurance Co. Ltd. (In re MF Global Holdings Ltd.)*, 562 B.R. 866, 877 (Bankr. S.D.N.Y. 2017) (holding that parties' attempt to initiate arbitration proceedings against a plan administrator and an assignee of debtor's rights violated the *Barton* doctrine).  And the doctrine applies equally to both claims and counterclaims raised against a trustee.  *See, e.g.*, *Durie Props., LCC v. Wasserman (In re Day)*, 2014 WL 4271647, at *2, *4 (D.N.J. Aug. 28, 2014) (applying the *Barton* doctrine to counterclaims brought against a trustee and noting that "the law in Third Circuit is clear—for numerous salutary reasons related to the protection of the both bankruptcy estate and the bankruptcy process, those who wish to sue a trustee in another forum

have to ask the bankruptcy court for permission"); *Wagner v. Maddox*, 2012 WL 13080114, at *1, *4-5 (D.N.M. June 11, 2012) (dismissing counterclaims against trustee for violating *Barton* doctrine); *Klein v. Shepard*, 2019 WL 6700244, at *2 (D. Utah Dec. 9, 2019) (holding *Barton* doctrine barred defendant's counterclaims, as no leave was sought to file the counterclaims).

Additionally, Babich cannot rely on either of the two exceptions to the *Barton* doctrine: (1) the statutory exception under 28 U.S.C. § 959(a) for a trustee's acts while "carrying on business" previously conducted by the debtor; or (2) the "ultra vires" exception for "cases in which the trustee should have, but did not, obtain a court order, or acted beyond the scope of a court order." *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484, 496 (Bankr. D. Del. 2012). The first exception is inapplicable because Babich did not assert the Counterclaims related to the Trustee's acts in "carrying on business" under 28 U.S.C. § 959(a).[44] The second exception is inapplicable because Babich did not assert the Counterclaims for any "ultra vires" acts by the Trustee. Rather, Babich asserted the Counterclaims against the Trustee in direct response to claims that the Trustee has been authorized by this Court to prosecute as an estate representative pursuant to the Chapter 11 Plan and Confirmation Order. Thus, the Trustee can show that Babich violated the *Barton* doctrine by bringing his Counterclaims.

Finally, to the extent Babich asserts a right of setoff in the Counterclaims, any such rights have long been extinguished. As the Third Circuit has held, "the right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim." *United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998). Here, the

---

[44] In fact, the Chapter 11 Plan explicitly states that the Trustee and the Liquidation Trust "shall have no objective to continue or engage in the conduct of a trade or business." *Id.* § 5.7(c).

Chapter 11 Plan was confirmed on January 16, 2020 (D.I. 1115), several years before Babich purported to assert any setoff rights. Moreover, no circumstances exist under which Babich's setoff rights may have been otherwise preserved. *Cf., e.g.*, *Dunn v. Patriarch Partners, LLC (In re Zohar III Corp.)*, 650 B.R. 622, 637 (Bankr. D. Del. 2023). First, the confirmed Chapter 11 Plan contains no provision that preserves claimants' setoff rights. Furthermore, Babich never filed a proof of claim or otherwise asserted his setoff rights prior to plan confirmation. Therefore, as of February 18, 2020, "pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all Assets . . . vest[ed] in the Insys Liquidation Trust" and the Trust "own[s] such Assets . . . free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind,"[45] including Babich's purported setoff rights.

Because the Counterclaims violate both the Plan Injunction and the *Barton* doctrine, those claims are rendered void *ab initio* and must be dismissed. *See, e.g.*, *Summit Metals*, 477 B.R. at 503 ("[T]he Complaint is void *ab initio* for violation of the *Barton* doctrine and will be dismissed for lack of subject matter jurisdiction . . . ."); *Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network, Inc.)*, 303 B.R. 42, 47 (Bankr. D. Del. 2003) ("[T]he Delaware Action is void *ab initio* because the Plaintiffs asserted causes of action in violation of the Confirmation Order and discharge injunction."). Indeed, Babich's violation of the *Barton* doctrine bars the exercise of subject matter jurisdiction over the Counterclaims, even in the context of an arbitration. *See, e.g.*, *McIntire*, 113 F. Supp. 3d at 774-75 (denying parties' request for retroactive leave to file a demand for arbitration, as "failure to seek leave of the receiver's appointing court bars exercise of subject matter jurisdiction over any third-party suit" and "cannot be remedied through retroactive leave"). Accordingly, "[t]he only appropriate remedy . . . is to order cessation of the improper action." *MF*

---

[45] Confirmation Order § 18.

*Global*, 562 B.R. at 875 (citations omitted); *see also Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005) (same).

**B.      The Trustee Will Suffer Irreparable Harm from a Denial of Injunctive Relief.**

The Trustee will likely suffer immediate and irreparable harm if Babich is not enjoined from prosecuting the Counterclaims.[46]   In the absence of injunctive relief, the Trustee will be forced to devote finite resources of the Liquidation Trust to defend against collateral attacks on this Court's jurisdiction and orders in another forum.  *See Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 829-30 (Bankr. M.D. Fla. 2002) (finding irreparable harm to enjoin lawsuit filed against the trustee in violation of the *Barton* doctrine).   The Trustee also "will be distracted by [the Counterclaims] from [his] duties to the creditors of the . . . Debtors' estates." *Unencumbered Assets Trust v. Hampton-Stein (In re Nat'l Century Fin. Enters., Inc.)*, 407 B.R. 895, 902 (Bankr. S.D. Ohio 2009) (finding irreparable harm to enjoin lawsuit filed against the post-confirmation trustee and others in violation of the *Barton* doctrine).   Further, "[t]here would be irreparable harm to the Trustee if the Trustee were required to defend [against the Counterclaims in arbitration] when it appears that all of the facts alleged in [the Counterclaims] relate to events that occurred in this Court." *Brown v. Steadman (In re Cherry)*, 2018 WL 2022986, at *2 (Bankr. S.D. Fla. Mar. 5, 2018) (finding irreparable harm to enjoin lawsuit filed against the trustee in violation of the *Barton* doctrine).   More importantly, permitting the Counterclaims to proceed not only will lead to judicial inefficiency, but will "undermine the fundamental policies upon which the bankruptcy court's jurisdiction is founded." *Lickman*, 286 B.R. at 830; *see also Nat'l Century*, 407 B.R. at 902 ("Such harm would be an affront to this Court's jurisdiction . . . .").   Accordingly, there will

---

[46] Some courts in other jurisdictions have held that a trustee need not show irreparable harm to obtain a section 105(a) injunction against a lawsuit filed in violation of the *Barton* doctrine. *See, e.g., Crown Vantage*, 421 F.3d at 976 ("There is no requirement in *Barton* or any of its progeny that the aggrieved party bear the additional burden of showing irreparable harm, nor does such a requirement make any sense in the *Barton* context.").

be immediate and irreparable harm if Babich is not enjoined in his prosecution of the unauthorized Counterclaims.

## C. Babich Will Suffer No Harm from a Grant of Injunctive Relief.

Babich, in contrast, will suffer no harm from being enjoined in his prosecution of the unauthorized Counterclaims. Indeed, Babich "'cannot be harmed by a prohibition from doing that which [he] is not permitted to do in the first place.'" *Cherry*, 2018 WL 2022986, at *2 (quoting *Lickman*, 286 B.R. at 830) (alteration in original). Rather, Babich merely will be delayed pending a final determination in this action about whether the Counterclaims violate the *Barton* doctrine or the Plan Injunction. *See, e.g.*, *Nat'l Century*, 407 B.R. at 902 (finding "only delay" and no harm "at all" to party enjoined from prosecuting its lawsuit pending a determination by the bankruptcy court about alleged violation of the *Barton* doctrine). Indeed, Babich has already delayed in the pursuit of his purported claims for years, having pleaded guilty in January 2019 before first claiming that the Trustee is liable to him in December 2023. Moreover, enjoining Babich from prosecuting the Counterclaims will not impair his ability to defend himself on the merits of the Trustee's claims.

## D. The Public Interest Favors a Grant of Injunctive Relief.

The public interest strongly supports granting injunctive relief here. Such relief will protect the important purposes served by the *Barton* doctrine. *See, e.g.*, *Cherry*, 2018 WL 2022986, at *2; *Lickman*, 286 B.R. at 831; *see also Swan Transp. Co.*, 596 B.R. at 137 (explaining that the purpose of the *Barton* doctrine is to "(1) ensure a consistent and equitable administration of the receivership or estate property; (2) protect against judgments entered outside of the purview of the bankruptcy court; and (3) prevent usurpation of powers and supervisory duties which exclusively belong to the bankruptcy court"). Injunctive relief will likewise protect the integrity of this Court's jurisdiction and prior orders, including the Plan Injunction. *See Lickman*, 286 B.R. at 831.

Injunctive relief, moreover, will prevent what is sure to be an unnecessary expenditure of resources by the Liquidation Trust (to the detriment of its many beneficiaries around the country) and by the arbitration tribunal, given Babich's clear violations of the Plan Injunction and the *Barton* doctrine. The public interest will be served by granting the requested injunctive relief.

**E.       The Trustee Is Not Required to Post a Bond.**

The Trustee is not required to post a bond for the requested injunctive relief.  Generally, the party seeking an injunction must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  This requirement, however, does not apply to "a debtor, trustee, or debtor in possession" under Federal Rule of Bankruptcy Procedure 7065.  Here, the Trustee has been appointed by this Court as the successor to the Debtors and their estates pursuant to 11 U.S.C. § 1123(b)(3)(B).  The Trustee, therefore, need not post a bond or other security for the requested injunctive relief.  *See O'Donnell v. Royal Bus. Grp., Inc. (In re Oxford Homes, Inc.)*, 180 B.R. 1, 14 n.20 (Bankr. D. Me. 1995).

<u>**CONCLUSION**</u>

WHEREFORE**,** the Trustee respectfully requests that the Court: (a) enter a preliminary injunction enjoining Babich from prosecuting the Counterclaims against the Trustee, pending a final adjudication of the Complaint in this action; and (b) grant such other and further relief as the Court deems just, proper, and equitable.

Dated:  January 23, 2024

**MORRIS, NICHOLS, ARSHT &
TUNNELL LLP**

*/s/ Matthew O. Talmo*
Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dabbott@morrisnichols.com
mtalmo@morrisnichols.com

*Counsel to the Trustee of the
Insys Liquidation Trust*

-and-

**REID COLLINS & TSAI LLP**
Eric D. Madden (admitted *pro hac vice*)
Michael J. Yoder (admitted *pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
Telephone: (214) 420-8900
emadden@reidcollins.com
myoder@reidcollins.com

-and-

Ryan M. Goldstein (admitted *pro hac vice*)
Morgan M. Menchaca (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy, C-300
Austin, TX 78746
Telephone: (512) 647-6100
rgoldstein@reidcollins.com
mmenchaca@reidcollins.com

*Special Litigation Counsel to the
Trustee of the Insys Liquidation Trust*